UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Tina M. Hartl,

         Plaintiff,

  v.

Commissioner of Social Security,

         Defendant.

**Decision and Order**

18-CV-1313 HBS
(Consent)

---

## I.  INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 8, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 9, 12.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II.  DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous

2

work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

3

physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff challenges the ALJ's determination that plaintiff could perform light work with restrictions. The ALJ found that plaintiff had the following severe impairments: "right-side cubital tunnel syndrome, right elbow epicondylosis, right shoulder degenerative joint disease—status post February 2014 surgery, degenerative disc disease of the cervical spine—status post February 2015 fusion, L5 lumbar listhesis, degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease ('COPD'), a depressive disorder, and an anxiety disorder (20 CFR 404.1520(c))."

[17.] After considering the entire record, the ALJ crafted the following RFC, reprinted here in full:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), because the claimant is able to lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. The claimant is occasionally able to use her right upper extremity to operate hand controls and reach overhead, and she is able to frequently use her right upper extremity to finger and handle objects. Although the claimant is unable to crawl or climb ladders, ropes, and scaffolds, she is able to occasionally balance, stoop, kneel, crouch, and climb ramps and stairs. The claimant is unable to tolerate excessive vibration and exposure to workplace hazards such as unprotected heights and moving machinery, and she must avoid concentrated exposure to pulmonary irritants such as odors, fumes, dusts, gases, and poor ventilation. In addition, the claimant is limited to work that does not require travel to unfamiliar places.

[21.] Plaintiff objects that the record does not provide a basis for an RFC with the level of exertion and with the details that the ALJ found; the ALJ, in her view, simultaneously downplays her severe anxiety and depression:

> In the instant matter, the ALJ found Plaintiff had the RFC to perform the lifting, carrying, standing, and walking necessary for light exertional work. Tr. 16. However, the decision failed to point to evidence to support this determination. From the onset of her disability throughout the relevant period, claimant has suffered from significant impairments of her dominant right upper extremity. She underwent shoulder surgery on February 3, 2014 and afterwards attended multiple

4

> courses of physical and occupational therapy, however, the record shows her right upper extremity impairments did not resolve. Notably, x-rays of Plaintiff's cervical spine, performed a year after her shoulder surgery, on March 2, 2015, showed widening of the right acromioclavicular joint, which suggested chronic abnormality. Tr. 645. This finding is consistent with Plaintiff's ongoing complaints of right upper extremity pain and symptoms. An April 12, 2016 occupational therapy evaluation identified functional limitations including difficulty gripping, grasping, lifting and carrying objects, and opening and twisting objects. Tr. 701. Additionally, Plaintiff consistently reported to her treatment providers having increased pain and symptoms with lifting objects, or having sustained injuries related to lifting. Tr. 338, 431, 442, 705, 720. She reported increased upper extremity pain with activity on many occasions. Tr. 277, 281, 590, 596, 678, 686, 829, 833, 859. The record indicated additional upper extremity surgery was considered but not performed because the surgeon was uncertain it would improve Plaintiff's symptoms. Tr. 630, 717. Although the ALJ implied a limitation to light work would accommodate Plaintiff's upper extremity symptoms, he does not point to any record evidence to support that she would be capable of lifting 10 pounds frequently or 20 pounds occasionally, let alone that she did not have limitations reaching (other than overhead). Tr. 20-21.
>
> The decision also contains no discussion of how Plaintiff's limitations from her impairments would allow her to stand and walk for 6 out of 8 hours in a day, as is required for light work. 20 C.F.R. 404.1567(b); Social Security Ruling 96-8p. Tr. 16. Although the ALJ found Plaintiff did not require a cane to ambulate (Tr. 20), the record supports her testimony that she utilized her cane for balance. Tr. 678, 682, 686, 690, 699, 717, 721, 723, 778, 784, 789, 793, 835, 856, 861, 872. She experienced episodes of dizziness which resulted in multiple falls. Tr. 54, 57, 58, 678, 682, 699, 717, 721, 725, 742, 776, 777, 782, 787, 791, 809. The record also contains multiple references to claimant's fatigue and shortness of breath, which would further impede her ability to perform standing and walking for the majority of a workday. Tr. 254, 279, 399, 519, 567, 593, 604, 621, 804, 807, 809. The ALJ's failure to support his determination Plaintiff could stand and walk for 6 hours in a workday was not harmless error since the VE testified there would be no light jobs available for an individual with the limitations identified in the RFC who was limited to standing and walking 4 hours in an 8-hour day. Tr. 16, 82.

(Dkt. No. 9-1 at 28–29.) Plaintiff expressed further concerns about the significant weight given to a consultative internal medicine examiner, Dr. Rosenberg, considering that Dr. Rosenberg saw her on November 5, 2014 while the ALJ's decision did not issue until October 4, 2017. (*Id.* at 30; *see also* Dkt. No. 13 at 2–3.) The Commissioner responds that "the ALJ accounted for her anxiety and depression in limiting her to work that did not require travel to unfamiliar places (Tr. 12, 16). This

5

accounts for Plaintiff's moderate limitations in adapting or managing oneself (Tr. 16)." (Dkt. No. 12-1 at 21.) The Commissioner also argues that the ALJ took careful consideration of plaintiff's physical limitations based on the information presented in the record:

> Plaintiff's arguments that the ALJ failed to properly evaluate her physical impairments and account for them in the RFC also fail. *See* Pl.'s Br. at 25-30. The ALJ recognized Plaintiff's objective imaging showing degenerative changes in Plaintiff's right shoulder and cervical and lumbar spines (Tr. 18, 250, 350, 355-56, 425, 448, 461, 526, 637, 697). The ALJ also noted a 2014 EMG nerve conduction studying showing evidence of right ulnar nerve mononeuropathy consistent with mild cubital tunnel syndrome and evidence of cervical radiculopathy (Tr. 18, 344, 359, 364). However, as the ALJ explained, the record shows Plaintiff reported improved symptoms with medication and treatment (Tr. 18). Indeed, Plaintiff reported back pain—which she had for many years—with medication (Tr. 320, 324, 454, 620-21, 720, 833, 859). The ALJ also properly considered evidence showing Plaintiff reported mild improvement in her right elbow symptoms with the use of a splint (Tr. 19, 370). Plaintiff also admitted improved daily activities and lifestyle with her medical regimen in October 2014 and April 2017 (Tr. 19, 324, 859). Further, as the ALJ explained, Plaintiff exhibited normal gait during many examinations (Tr. 19-20, 245, 455-56, 613, 651, 767, 797, 801, 873). The ALJ also properly considered Dr. Slater's January 2017 statement that Plaintiff's medical conditions were generally stable with ongoing conservative treatment (Tr. 20, 848). Likewise, Plaintiff reported improved quality of life with use of medications in April 2017 (Tr. 20, 859). *See Reices-Colon*, 523 F. App'x at 799; 20 C.F.R. § 404.1529; *Poupore*, 566 F.3d at 307; *Rivera v. Colvin*, No. 1:14-CV-00816 (MAT), 2015 WL 6142860, at *6 (W.D.N.Y. Oct. 19, 2015) (finding "the ALJ was entitled to consider evidence that plaintiff pursued a conservative treatment as one factor in determining credibility" and citing *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2014)).

(*Id.* at 24.)

The Commissioner has the better argument. "If all of the evidence we receive, including all medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence." 20 C.F.R. § 404.1520b(a). "We will assess your residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Here, and with respect to the portion of the RFC addressing stairs, a cardiology consultation on September 10, 2013 indicated that plaintiff "can climb 13–14 stairs before she gets short of breath" [304], due at least in part to her smoking history. *Cf.*

*Beshaw v. Comm'r*, No. 8:15-CV-556 (MAD), 2016 WL 4382702, at *14 (N.D.N.Y. Aug. 16, 2016) ("Plaintiff's heart condition and asthma were considered in her RFC determination by limiting her to being able to only occasionally climb ramps and stairs. This determination is consistent with Plaintiff's reports that her shortness of breath is exacerbated by exercise. Further, the limitation that Plaintiff must avoid concentrated exposure to respiratory irritants takes into account the effect that her asthma has upon her ability to work in such conditions."). The same examination, while admittedly a cardiology consultation, did note that plaintiff had "normal orientation, mood and affect." [305.] An electromyogram (EMG) of plaintiff from December 13, 2013 yielded a normal study with "no electrophysiologic evidence of a right cervical radiculopathy, right brachial plexopathy, nor of a right median, ulnar, or radial mononeuropathy." [241.] Strength and reflexes were normal. [241.] On March 10, 2014, an examination showed that plaintiff had right shoulder joint pain but was in no apparent distress. [258, 259.] On June 20, 2014, an examination noted plaintiff's right shoulder pain but also that she was no longer proceeding with physical therapy. [266.] On September 23, 2014, plaintiff was diagnosed more specifically with the right shoulder rotator cuff tendinitis and impingement syndrome. [370.] Examinations on January 16 and 28, 2015 showed that plaintiff had stabilized mood and anxiety as well as shoulder pain that did not significantly affect range of motion. [316, 8-1 at 130.] The same examination nonetheless showed that plaintiff had full motor strength and a normal range of motion in her shoulder joint with reduced range of motion in her neck. [317.] *Cf. Keller v. Comm'r*, 394 F. Supp. 3d 345, 352 (W.D.N.Y. 2019) (RFC justified in part because claimant had "full strength in her upper and lower extremities"). The evaluation of plaintiff's strength in 2015 differs somewhat from an examination on September 10, 2014 that noted that "[i]t was difficult to evaluate the strength in right upper extremity, but she does have some right deltoid wasting noted. Her strength is weaker on the right

7

grip." [349.] Nonetheless, an examination on June 16, 2015 uncovered bilateral shoulder muscle tenderness but no apparent distress and no notation for limited range of motion. [8-1 at 139.] Plaintiff underwent aneurysm and cervical fusion surgery in 2015; she was stable and received radiologically "excellent results." [8-1 at 151, 153; *see also* 8-1 at 246 (2016 examination).] A progress note from August 31, 2015 showed normal range of motion with normal strength. [8-1 at 185.] *Cf. Amons v. Astrue*, 617 F. Supp. 2d 173, 176 (W.D.N.Y. 2009) (RFC justified in part by "minor limitations in range of motion"). An examination on March 9, 2016 showed complete obliteration of the aneurysm (upon review of an angiogram) and right shoulder weakness. [8-1 at 250.] A progress note from March 17, 2016 showed that plaintiff considered her medications "somewhat effective" in helping with depression; the same note showed plaintiff reporting that her anxiety was "controllable at this time." [8-1 at 289.] During an examination on April 8, 2016 after a fall and a sprained wrist, plaintiff had pain but full bilateral strength and limited range of motion in the right shoulder. [8-1 at 311.] On November 10, 2016, plaintiff reported a slight decrease in the effectiveness of her antidepressant medication but that the medication gave her "some stabilization." [8-1 at 366.] Finally, on February 6, 2017, plaintiff reported that her depression "has lessened considerably." [8-2 at 55.] *Cf. Britton v. Colvin*, No. 5:13-CV-00907, 2015 WL 1413382, at *15 (N.D.N.Y. Mar. 27, 2015) ("Indeed, Plaintiff reported on numerous occasions that her medications helped her attitude and anxiety, and assisted in controlling her symptoms.").

From the above citations and others that the Commissioner has made, the record from 2013 into 2017 shows some fluctuations but a largely consistent pattern: right shoulder impingement that caused pain but that did not have a major impact on strength and range of motion. The record also shows depression and anxiety that fluctuated somewhat but remained largely under control. The record into 2017 thus does not conflict with Dr. Rosenberg's 2014 findings of pain, decreased range

8

of motion, but only mild-to-moderate restrictions. [76–78.] The ALJ accordingly had a basis to decide that plaintiff's testimony about severity of symptoms could not "reasonably be accepted as consistent with the objective medical evidence." 20 C.F.R. § 404.1529(c)(3); *see generally* Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017). The consistency of the record into 2017 is important to note because of plaintiff's argument about the staleness of Dr. Rosenberg's medical opinion. Plaintiff's argument would require more consideration had plaintiff's signs and symptoms changed significantly from when Dr. Rosenberg saw her in November 2014. *Cf. Hansen-Nilsen v. Comm'r*, No. 515CV1258GTSWBC, 2017 WL 913933, at *6 (N.D.N.Y. Feb. 7, 2017) ("A review of the record before the ALJ failed to indicate that evidence received after Dr. Hochberg's opinion was rendered was materially different from the medical records reviewed by him.") (citation omitted), *report and recommendation adopted*, No. 515CV1258GTSWBC, 2017 WL 913639 (N.D.N.Y. Mar. 6, 2017).

In all, while plaintiff's arguments are not without some support in the record, she has not made enough of a showing under the applicable standard to discredit the ALJ's RFC or to invoke the Medical Vocational Guidelines. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (internal quotation marks and citation omitted); *see also Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) ("We examine evidence both supporting and detracting from the decision, and we cannot reverse the decision merely because there exists substantial evidence supporting a different outcome.") (citation omitted); *Henderson v. Comm'r*, No. 18-CV-00072, 2019 WL 3237343, at *5 (W.D.N.Y. July 18, 2019) (affirming ALJ resolution of RFC where treating physician records supported exertional limits despite other evidence in the record). Under these

circumstances, the Court is obligated to affirm the Commissioner's final determination regardless of how it might have viewed the evidence in the first instance.

### III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 12) and denies plaintiff's cross-motion (Dkt. No. 9).

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                                      __/s Hugh B. Scott_____
                                                     Hon. Hugh B. Scott
                                                     United States Magistrate Judge

DATED: March 13, 2020